UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DANIEL R. L.,                            )
                                         )
        Plaintiff         )
                                         )
v.                                       )    No. 1:20-cv-00258-DBH
                                         )
ANDREW M. SAUL,                          )
Commissioner of Social Security,         )
                                         )
        Defendant         )

### REPORT AND RECOMMENDED DECISION[1]
### AND ORDER ON MOTION TO STRIKE[2]

This unusual Social Security Disability (SSD) appeal raises the question, not of whether the administrative law judge (ALJ) supportably found that the plaintiff's disability ended on August 1, 2017, but rather whether the plaintiff was eligible for extended benefits despite his medical improvement because of his participation in a vocational rehabilitation program. *See* [Plaintiff's] Itemized Statement of Errors ("Statement of Errors") (ECF No. 15). The plaintiff and the commissioner disagree as to the plaintiff's eligibility for extended benefits and, more fundamentally, whether the issue was properly before the ALJ to decide in the first place. For the reasons that follow, I recommend that the court vacate the ALJ's decision on the issue of extended benefits and remand this case for proceedings consistent herewith, but otherwise affirm the ALJ's determination that the plaintiff's disability ceased on August 1, 2017.

---

[1] The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.
[2] For the reasons discussed below, I also deem the commissioner's motion to strike an affidavit filed by the plaintiff moot. *See* Defendant's Motion to Strike Plaintiff's Affidavit of May 5, 2021 ("Motion to Strike") (ECF No. 29).

## I. Background

By a decision dated November 2, 2007, the plaintiff was adjudicated disabled. *See* Finding 1, Record at 13. In August 2017, Disability Determination Services (DDS) determined that, as a result of medical improvement, the plaintiff's disability had ceased. *See id.* at 84-96. The plaintiff requested reconsideration of that determination, following which a disability hearing officer issued a decision in January 2018 again determining that the plaintiff's disability had ended as of August 2017. *See id.* at 122, 141-48. The hearing officer noted, however, "The [plaintiff] is currently involved in an individualized plan for employment through Vocational Rehabilitation[,] and he may be eligible for extended benefits under Section 301 of the Social Security Act[,]" a determination that "will be made by the Social Security Administration." *Id.* at 147; *see* 42 U.S.C. § 425(b) (providing that a claimant participating in an approved vocational rehabilitation program is entitled to continued benefit payments notwithstanding the fact that his disability has ceased if the commissioner determines that the program will increase the likelihood that he will not have to return to the disability benefit rolls); 20 C.F.R. § 404.316(c)(1)(ii) (providing that a claimant must have begun participating in vocational rehabilitation before the date his disability ended in order to receive extended benefits).[3]

The plaintiff filed another request for reconsideration in February 2018, which the agency treated as a request for a hearing before an ALJ on the issue of his disability cessation. *See* Record at 159. While that request was pending, the Office of Disability Operations (ODO) determined in May 2018 that the plaintiff was not eligible for extended benefits "because he was not in an appropriate program before 08/2017, the month his disability ceased." *Id.* at 162. ODO based that

---

[3] These extended benefit payments are "commonly referred to as Section 301" payments "because the initial legislative authority for continued payment of benefits to individuals in a [vocational rehabilitation] program was provided in Section 301 of the Social Security Disability Amendments of 1980." Social Security Administration Programs Operations Manual System (POMS) DI § 14505.005.

determination on a form filled out by the plaintiff's vocational counselor indicating that he was "receiving [vocational rehabilitation] services, employment services, or other support under an Individualized Plan for Employment" dated September 29, 2017 – the month after his disability had ceased. *Id.* at 162, 164-67. Notes in the record reflect that ODO made several unsuccessful attempts to verify the start date of the plaintiff's program with his vocational counselor. *See id.* at 170-71.

In April 2019, the plaintiff appeared unrepresented at a hearing before an ALJ. *See id.* at 44-54. During the hearing, he told the ALJ that he had been participating in a vocational rehabilitation program at the time of the disability cessation determination and that it was his understanding that he would not be subject to continuing disability review while still in the program. *See id.* at 50-51. After expressing doubt as to that proposition, the ALJ referenced ODO's determination that the plaintiff had not begun participating in vocational rehabilitation services until after his disability ceased in August 2017. *See id.* at 51. He explained to the plaintiff:

> It says you were not in the program for voc rehab services a month before your disability ceased. So, that's probably what is required is you actually have to be in the voc rehab services before they find that your disability ceases. . . . In other words, by July of 2017, you would have had to be in the program.

*Id.* at 51-52. The plaintiff replied, "I have my plan start date as May '17. So, I was approved before that." *Id.* at 52. At that point, the ALJ asked for copies of the plaintiff's vocational rehabilitation documents and indicated that he would have someone investigate the matter; he then postponed the hearing to allow the plaintiff time to find a representative. *See id.* at 52-54. The plaintiff provided the ALJ with documents marked as Exhibits 11E and 18E in the Record. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Commissioner's Initial Brief") (ECF No. 19) at 4-5; Record at 366-82, 428-46.

In August 2019, the plaintiff once again appeared unrepresented before the ALJ for a hearing. *See* Record at 56-76. At the outset of the hearing, the plaintiff referenced his previous argument about vocational rehabilitation and noted that he was still participating in the program. *See id.* at 59-60. The ALJ indicated for a second time that he would look into the matter and, if the plaintiff was correct, send the matter "back to the field office[.]" *Id.* at 60.

Following that hearing, the ALJ issued a decision finding that the plaintiff's disability had ended on August 1, 2017. *Id.* at 11-18. The ALJ included the following discussion of the plaintiff's eligibility for Section 301 payments:

> During the hearing, the [plaintiff] raised the issue that he should not have been subject to a continuing disability review (CDR) based on Section 301 (when an individual is part of a vocational rehabilitation program) and therefore, his disability payments should continue.
>
> Although the [plaintiff] was part of a vocational rehabilitation program, he did not sign into this program until September 29, 2017, which is after his benefits ceased (August 2017). SSA [Social Security Administration] policy provides that for an individual to be eligible for Section 301 payments, they must have begun participating in the program <u>before</u> the month their disability ceased, which in this instance means that the [plaintiff] would have had to be in such a program by July 2017.
>
> Unfortunately for the [plaintiff], he was not part of the vocational rehabilitation program in July 2017 and, therefore, he does not qualify for Section 301 payments.

*Id.* at 11 (citations omitted) (emphasis in original).

The plaintiff appealed the ALJ's decision to the Appeals Council, submitting 18 pages of records from the Bureau of Rehabilitation Services dated March 9, 2017, through September 29, 2017. *Id*. at 1-2. The Appeals Council declined to review the decision, explaining that it found no basis for changing that decision and that the vocational evidence submitted by the plaintiff was "not material because it is not relevant to your claim for disability." *Id.* at 1-2.

The plaintiff, by then represented by counsel, appealed the commissioner's decision to this court, filing the instant complaint on July 23, 2020. Complaint (ECF No. 1). In his answer to that complaint, the commissioner admitted the plaintiff's allegations that he "ha[d] exhausted [his] administrative remedies" and that "this Court ha[d] jurisdiction for judicial review[.]" Complaint ¶ 3; Answer (ECF No. 10) ¶ 2. The parties proceeded to brief the issue of whether the ALJ's determination that the plaintiff was ineligible for Section 301 payments was supported by substantial evidence. *See* Statement of Errors; Commissioner's Initial Brief.

At oral argument, in addition to hearing argument on the merits of the Section 301 issue, I sought clarification on an issue that neither side had briefed: "whether the question of the plaintiff's eligibility for Section 301 payments was properly before the ALJ to decide in the plaintiff's appeal from a disability cessation determination when (1) the plaintiff filed his request for a hearing in front of the ALJ before [ODO] determined he was ineligible for Section 301 payments, (2) it appears the plaintiff never requested reconsideration of ODO's Section 301 determination, and (3) the commissioner has separate procedures for resolving appeals from disability cessation determinations and Section 301 determinations[.]" Order re Social Security Statement of Errors/Fact Sheet (ECF No. 22). Counsel for the plaintiff agreed with my suggestion that the issue was best addressed through supplemental briefs. Counsel for the commissioner agreed to submit supplemental briefing, but also indicated that he had considered this issue, spoken with his office's jurisdictional coordinator about this case, and ultimately decided to brief the merits of the plaintiff's Section 301 argument.

## II. Discussion

### A. Reviewability Under Section 405(g)

In sharp contrast to his previous decision to brief the merits and seek affirmance of the ALJ's Section 301 determination, the commissioner now asserts in his supplemental briefing that the plaintiff's "eligibility for Section 301 payments was not properly before the ALJ" to decide because the plaintiff did not appeal ODO's determination that he was ineligible for such payments. Defendant's Supplemental Brief in Response to the Court's Order of March 14, 2021 ("Commissioner's Supplemental Brief") (ECF No. 26) at 2. According to the commissioner, the plaintiff's failure to exhaust his administrative remedies leaves this court without "subject matter jurisdiction" under 42 U.S.C. § 405(g) to review the Section 301 payment issue. *Id.* at 6.

Section 405(g) provides for judicial review of "any final decision" of the commissioner "made after a hearing[.]" 42 U.S.C. § 405(g). The Supreme Court has explained that this provision "contains two separate elements: first, a jurisdictional requirement that claims be presented to the agency, and second, a waivable requirement that the administrative remedies prescribed by the [commissioner] be exhausted." *Smith v. Berryhill*, 139 S. Ct. 1765, 1773 (2019) (alteration, citation, and internal quotation marks omitted). There is no dispute that the plaintiff's eligibility for Section 301 payments was presented to the agency, thereby satisfying the first requirement. Accordingly, reviewability in this case turns on the second nonjurisdictional requirement of exhaustion.

Unlike the presentment requirement, a party's failure to exhaust all of the steps in the administrative process may be waived by the agency or excused by the courts. *See id.* at 1773-74. Courts do not mechanically apply the exhaustion doctrine but rather employ an "intensely practical" approach that is "guided by the policies underlying the exhaustion requirement." *Bowen*

6

*v. City of New York*, 476 U.S. 467, 484 (1986). Those policy justifications include "preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

Applying those principles in *Salfi*, the Supreme Court reached the merits of an appeal even though the appellees had not requested a hearing before an ALJ after their claims for Social Security benefits were denied at the initial and reconsideration levels. *See id.* at 764-67. The Court acknowledged that the appellees had fallen "short of meeting the literal requirement of [section] 405(g) that there shall have been a final decision of the [commissioner] made after a hearing" and of satisfying Social Security regulations specifying "that the finality required for judicial review is achieved only after the further steps of a hearing before an [ALJ] and, possibly, consideration by the Appeals Council." *Id.* at 765 (internal quotation marks omitted). Nevertheless, the Court interpreted the commissioner's failure to challenge the exhaustion requirements as "a determination by him that for the purposes of th[e] litigation the reconsideration determination" was final within the meaning of section 405(g). *Id.* at 767.

The United States Court of Appeals for the Third Circuit reached a similar result in *Rankin v. Heckler*, 761 F.2d 936 (3d Cir. 1985). In that case, the SSA determined that the claimant's disability had ended and that his eligibility for benefits therefore had ceased. *See id.* at 938. The claimant appealed the initial decision but did not timely request a hearing before an ALJ after that appeal was denied. *See id.* at 938-39. Eight months later, when he was informed that he did not qualify for a waiver of overpayment of benefits, the claimant retained a lawyer and filed an appeal seeking to resolve both the disability cessation and overpayment issues. *See id.* at 939.

7

The agency determined that his appeal of the disability cessation was untimely and affirmed the denial of the overpayment waiver. *See id.* The claimant thereafter requested and obtained a hearing before an ALJ. *See id.* In his decision, the ALJ noted that the claimant had not timely appealed the cessation issue but nevertheless found that the disability cessation determination was correct. *See id.* The ALJ also ruled that the claimant was not entitled to a waiver of the overpayment. *See id.* The Appeals Council denied the claimant's request for review, following which the plaintiff timely filed a complaint in the district court, which granted summary judgment in the commissioner's favor on both issues. *See id.*

The Third Circuit held that that the cessation issue was properly before the district court despite the claimant's untimely appeal. *See id.* at 940-41. It explained, "Although the [claimant] failed to appeal from the cessation determination . . . we find that later events in this case establish the equivalence of full compliance with the [section] 405(g) requirement." *Id*. at 941. That was so, it observed, because the claimant had "obtained the equivalent amount of review of the cessation determination that he would have had if he had timely appealed the decision[.]" *Id.* at 941. The court reasoned that because the purposes of the exhaustion doctrine had been served, it was appropriate to treat the commissioner's decision as final despite the procedural flaws. *See id.* It further found that the commissioner had waived the issue when she admitted the allegations in the claimant's complaint, including that he had fully exhausted his administrative remedies, and briefed the merits of the cessation issue without raising any challenge based on a failure to exhaust remedies. *See id.*

More recently, the United States District Court for the District of New Jersey addressed the "unique procedural" question of whether it had "jurisdiction over a decision rendered by [an ALJ], and affirmed by the Appeals Council, on a matter that had not been appealed[.]" *Molloy v.*

8

*Astrue*, Civil Action No. 08-4801(JAG), 2010 WL 421090, at *2 (D.N.J. Feb. 1, 2010). Relying on *Salfi* and *Rankin*, the court concluded that jurisdiction was proper under section 405(g) where the matter had been reviewed "at all levels other than at the intermediate reconsideration level[,]" and "the policies generally served by the exhaustion requirement" had been satisfied where the claimant had "received the ultimate level of administrative review on the issue." *Id.* at *3-4. The court further noted that the commissioner had "failed to even mention the issue of exhaustion during the administrative process" and, other than briefly referencing the fact that that the issue had not been appealed, "proceed[ed] to brief the merits" of the issue to the court "instead of posing the issue of exhaustion as a jurisdictional bar." *Id.* Given such a posture, the court held that it was "appropriate to interpret the Commissioner's decision" as a final decision. *Id.*

The circumstances of this case are analogous to those in *Salfi*, *Rankin*, and *Molloy*. Although it appears that the plaintiff did not fully exhaust his administrative remedies insofar as he did not seek intermediate reconsideration of ODO's determination that he was ineligible for Section 301 payments, he raised the issue before the ALJ, who addressed it in his decision, which the Appeals Council declined to review. Thus, the plaintiff "received the ultimate level of administrative review on the issue[,]" satisfying "[t]he policies generally served by the exhaustion requirement[.]" *Molloy*, 2010 WL 421090, at *4. Given the "intensely practical" manner in which the exhaustion doctrine must be applied, *Bowen*, 476 U.S. at 484, it is "appropriate to interpret the" ALJ's decision on the issue of the Section 301 payments as a final decision subject to judicial review under section 405(g), *Molloy*, 2010 WL 421090, at *4.

Moreover, the commissioner waived any issue of failure to exhaust remedies when, in answering the instant complaint, he admitted that the plaintiff had exhausted his administrative remedies and that this court had jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g),

9

*see* Complaint (ECF No. 1) ¶ 3; Answer (ECF No. 10) ¶ 2, and then chose to brief the merits of the Section 301 issue without pressing any argument that the plaintiff's failure to seek reconsideration acted as a bar to judicial review, *see generally* Commissioner's Initial Brief.[4] Counsel's comments at oral argument make clear that the commissioner considered the exhaustion issue but, as he was entitled to do, chose to treat the ALJ's decision on the Section 301 payments as final. *See Mathews v. Eldridge*, 424 U.S. 319, 330 (1976) ("[U]nder [section] 405(g) the power to determine when finality has occurred ordinarily rests with the [commissioner] since ultimate responsibility for the integrity of the administrative program is his."). My request for supplemental briefing does not alter this analysis. It would be unfair to hold that, in seeking clarification on the confusing procedural posture of this case, I invited the commissioner to reverse course and assert that a waivable exhaustion issue he chose not to press at several junctures now bars judicial review.

The commissioner's waiver renders it unnecessary for me to address his arguments that judicial review is improper because his own policies and regulations were not precisely followed. Nevertheless, a few points bear mention.

First, all of the exhaustion cases on which the commissioner relies are distinguishable. *See* Commissioner's Supplemental Brief at 3-4; *Matos v. Sec'y of Health, Educ., & Welfare*, 581 F.2d 282, 283-85 (1st Cir. 1978) (holding that district court lacked subject matter jurisdiction to review ALJ's dismissal primarily on *res judicata* grounds of claimant's third disability claim, which raised same issues as prior two claims with respect to which claimant never sought ALJ hearing); *Reedom v. Social Sec. Admin. Comm'r*, No. 2:13-cv-00308, 2013 WL 5960861, at *1 (D. Me. Nov. 7, 2013) (granting commissioner's motion to dismiss Social Security appeal when commissioner averred

---

[4] Because the basis of the plaintiff's appeal was not entirely clear when the commissioner answered the complaint, and the plaintiff had in fact exhausted his remedies with respect to the disability cessation issue, I do not find the commissioner's admission fully dispositive. Nonetheless, the commissioner could have then availed himself of that opportunity to challenge the plaintiff's purported exhaustion of his remedies with respect to the Section 301 issue.

10

"that the agency decision was never appealed to an" ALJ, and the plaintiff's responsive pleading made "absolutely no showing that he ha[d] ever appealed any reconsideration determination to an" ALJ); *Lee v. Barnhart*, 2002 WL 47131, No. Civ. 00-477-M, at *4-5 (D.N.H. Jan. 3, 2002) (holding that court lacked jurisdiction pursuant to section 405(g) to adjudicate claimant's appeal of ALJ's discretionary decision not to reopen prior application for benefits).

Second, I am not persuaded by the commissioner's argument that the ALJ's Section 301 determination was not a finding for purposes of judicial review because it was addressed in the section of the ALJ's decision titled "Jurisdiction and Procedural History." Commissioner's Supplemental Brief at 5. Although, as the commissioner points out, the agency's Hearings, Appeals, and Litigation Law Manual ("HALLEX") instructs that an ALJ's findings should be included under the heading "Findings of Fact and Conclusions of Law," HALLEX § I-2-8-25(B)(4), 1993 WL 643060, the HALLEX does not have the force of law, *see Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 29 (1st Cir. 2017), and it is clear from the context of the ALJ's discussion of the Section 301 issue that he was not merely reciting the procedural history of the case but, rather, making findings after investigating the issue, *see* Record at 11. Indeed, the commissioner acknowledged as much in his initial briefing. *See* Commissioner's Initial Brief at 1 (requesting that this court affirm the ALJ's decision because "substantial evidence supports the ALJ's *finding*" that the plaintiff was ineligible for Section 301 payments (emphasis added)).

Third, the commissioner misses the mark in suggesting that judicial review is precluded by a strict reading of section 405(g). *See* Commissioner's Supplemental Brief at 3. The plaintiff "obtained the kind of hearing that [section] 405(g) most naturally suggests: a hearing on the merits. In other words, even giving [section] 405(g) a relatively strict reading, [the plaintiff] appears to satisfy its terms." *Smith*, 139 S. Ct. at 1775 (footnotes omitted). Moreover, Congress designed

section 405 "to be unusually protective of claimants," suggesting that it "wanted more oversight by the courts in this context rather than less[.]" *Id.* at 1776 (citation and internal quotation marks omitted); *see also Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986) (reiterating "the strong presumption that Congress intends judicial review of administrative action").

Finally, given these conclusions, I need not and do not consider the plaintiff's argument, accompanied by a supporting affidavit, that he did in fact file paperwork appealing ODO's Section 301 determination. *See* Plaintiff's Supplemental Brief in Response to the Court's Order of March 14, 2021 ("Plaintiff's Supplemental Brief") (ECF No. 25); [Plaintiff's Supplemental Reply Brief] (ECF No. 28); Affidavit of Plaintiff Daniel Robert Lau (ECF No. 28-1), attached thereto. There is little reason to attempt to untangle the record when, even assuming the plaintiff did not seek intermediate reconsideration of ODO's determination, he raised the issue before the ALJ and received a decision that is, for the reasons stated above, properly subject to judicial review. Accordingly, I deem the commissioner's motion to strike the plaintiff's affidavit moot. *See* Motion to Strike.

### B. Eligibility for Section 301 Payments

As discussed, a claimant participating in an approved vocational rehabilitation program is entitled to continued Section 301 benefit payments notwithstanding the fact that his disability has ceased if the commissioner determines that he began his participation before his disability ended and that the program will increase the likelihood that he will not have to return to the disability benefit rolls. *See* 42 U.S.C. § 425(b); 20 C.F.R. § 404.316(c)(1)(ii). In this case, ODO found that the plaintiff was not entitled to Section 301 payments based on its determination that he had not begun participating in a vocational rehabilitation program before his disability ended on August 1, 2017, *see* Record at 162, a determination which, in turn, was based on a form filled out by the

plaintiff's vocational counselor and dated February 22, 2018, indicating that he had been "receiving [vocational rehabilitation] services, employment services, or other support under an Individualized Plan for Employment (IPE)" that had been signed on September 29, 2017, *see id.* at 164-67. After the plaintiff raised the issue before the ALJ, the ALJ again determined that "he did not sign into" the vocational rehabilitation program "until September 29, 2017" and, therefore, did "not qualify for Section 301 payments." *Id.* at 11.

The plaintiff emphasizes that he submitted documents to the ALJ showing that he and his vocational counselor had signed an IPE as early as March 2017 and that he "affirmatively indicated to the ALJ that the date . . . he originally began participating in an IPE was prior to August 1, 2017[.]" Statement of Errors at 11 (citing Record at 52, 59-60, 366-82, 442-45). He argues, among other things, that the ALJ erred in failing to "evaluate the evidence of record before him that conflicted with the agency's earlier [Section 301] determination and explain why he found that [the plaintiff] did not begin participating in vocational rehabilitation services" before his disability ceased. *Id.* at 12.[5]

The commissioner, on the other hand, argues that the ALJ was justified in relying on the September 29, 2017, date listed on the form filled out by the plaintiff's vocational counselor in determining that the plaintiff was ineligible for Section 301 payments. *See* Commissioner's Initial Brief at 2-3. He contends that, for a number of reasons, the plaintiff's evidence is unreliable, including that the plaintiff has, at different times, indicated that he started vocational rehabilitation in March, April, or May 2017, that the March 2017 IPE the plaintiff submitted to the ALJ was

---

[5] The plaintiff also argues that the Appeals Council was egregiously mistaken in finding that the vocational evidence he submitted in connection with that appeal was not material. *See* Statement of Errors at 12-13. However, the Appeals Council correctly found that the evidence was "not relevant to [the plaintiff's] claim for *disability*." Record at 2 (emphasis added). It made no finding regarding the relevance of that evidence to the question of whether the plaintiff was entitled to Section 301 payments. *See id.* Thus, the success of this appeal hinges on the plaintiff's challenge to the ALJ's handling of the Section 301 issue.

13

signed on a Sunday by an unknown vocational counselor, and that the plaintiff has failed to make specific representations about the nature of his participation in vocational rehabilitation between March and September 2017. *See id.* at 1-2, 5-8.

The plaintiff has the better argument.

The problem with the commissioner's arguments is that the ALJ never referenced the plaintiff's contrary evidence in his decision, let alone articulated whether or why he discounted that evidence. *See* Record at 11. Thus, although the commissioner identifies reasons why the ALJ *could* have discounted the plaintiff's evidence, this court "must affirm, if at all, on the basis of a rationale *actually articulated* by the agency decision-maker." *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010) (emphasis added). The ALJ's failure to explain how he evaluated the plaintiff's evidence leaves me unable to determine whether he arrived at his decision *via* an acceptable analytical pathway or whether he improperly disregarded evidence material to the question of when the plaintiff began participating in vocational rehabilitation services. *See, e.g., Picard v. Berryhill*, No. 2:16-cv-00636-JHR, 2018 WL 1370681, at *3 (D. Me. Mar. 16, 2018) ("[W]hen failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway," reversal and remand are warranted.); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." (citation omitted)).

Because the ALJ failed in his duty to resolve material conflicts in the evidence, and the court is ill-equipped to resolve such conflicts in the first instance, remand is required on the issue of the plaintiff's eligibility for Section 301 payments. *See, e.g.*, *Soto v. Sec'y of Health & Human*

*Servs.*, 795 F.2d 219, 222 (1st Cir. 1986) ("We are ill-equipped to sort out a record that admits of conflicting interpretations. Accordingly, we believe the case must be remanded to the [commissioner] for reconsideration of his decision[.]"); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (noting that it is the commissioner's duty, not the court's, to resolve "conflicts in the evidence").

### III. Conclusion

For the foregoing reasons, I **DEEM** the commissioner's motion to strike **MOOT** and recommend that the commissioner's decision be **AFFIRMED** with respect to the issue of disability cessation but **VACATED** and the case **REMANDED** for further proceedings consistent herewith on the issue of the plaintiff's eligibility for Section 301 payments.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of July, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
